UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

**HYDRA BURTON,** individually, and on
behalf of others similarly situated,

        Plaintiff,

vs.

**GREAT VIRTUALWORKS, INC.,**

        Defendant.

Case No.

## COLLECTIVE AND CLASS ACTION
## COMPLAINT WITH JURY DEMAND

Plaintiff, HYDRA BURTON, individually and on behalf of all others similarly situated,

by and through her attorneys BARKAN MEIZLISH HANDELMAN GOODIN DEROSE

WENTZ, LLP and JTB LAW GROUP LLC, hereby brings this Collective and Class Action

Complaint against Defendant, GREAT VIRTUALWORKS, INC., and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and

Fed. R. Civ. P. 23 by Plaintiff, HYDRA BURTON (hereinafter referred to as "Plaintiff"),

individually and on behalf of all similarly situated persons employed by Defendant, GREAT

VIRTUALWORKS, INC. (hereinafter referred to as "Great Virtual Works" or "Defendant"),

arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§ 201, *et seq.*, the Kentucky's Wages and Hours Act, KRS §§ 337.010, *et. seq.*, and its breach of

its contractual obligation to pay Plaintiff and other "Independent Business Owners" (hereinafter

"IBOs") s for all hours worked.

2.      Defendant describes its business on its website as follows:

> Great VirtualWorks is a virtual contact center company with a
> full-scale virtual platform that has created the presence in the
> marketplace for the call center workforce using a network of

Independent Business Owners who operate their companies all over the nation to support our clients. With the ability to join our network with Freedom, Flexibility and Choice, there is no pressure on where or when to service. Our network of agents can work from their home or business offices and provide call center services via calls, chats, and email channels. At Great VirtualWorks we expand the level of opportunity to work without constraints.

See **Exhibit 1**, *"About VirtualWorks" Web* Page, http://greatvirtualworks.com/company/

3.　　At all relevant times and continuing through the present, IBOs referred to above, including Plaintiff, have been misclassified by Defendant as independent contractors operating as limited liability companies. As a matter of "economic reality," Defendant's "Independent Business Owners" are in fact individual employees who work entirely from their homes, performing their duties of engaging in telephone-based customer service, sales service and technical support. *See Keller v. Miri Microsystems LLC*, 781 F.3d 799, 804 (6th Cir. 2015) ("To effect Congress's broad purpose, we must look to see whether a worker, even when labeled as an 'independent contractor,' is, as a matter of 'economic reality,' an employee") (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947)). The limited liability companies under which Plaintiff and similarly situated IBOs operate are sham entities which Defendant requires them to create in order to foster the illusion that IBOs are not employees.

4.　　As set forth herein, the IBOs qualify as employees under the FLSA and Kentucky's Wages and Hours Act because at all relevant times Defendant has exercised significant control over IBOs' work schedules and activities, has required IBOs to work for extended durations (nearly a year for Plaintiff and significantly longer for other IBOs), has not required IBOs to make significant investments in equipment or materials or exercise any specific skills, has not afforded IBOs any significant opportunity for profit or loss, and has relied on IBOs' services as an integral part of its business of providing telephone-based customer service,

sales service and technical support to other companies.

5.     Plaintiff HYDRA BURTON worked as an IBO for Defendant from approximately April 2015 to approximately March 2016, and has consented in writing to maintain this collective action pursuant to 29 U.S.C. § 216(b), on behalf of herself and other similarly situated individuals who worked as IBOs. *See **Exhibit 2**, Plaintiff's Consent Form.*

6.     Plaintiff and similarly situated IBOs were victims of Defendant's common unlawful policies in violation of the FLSA and Kentucky's Wages and Hours Act, including:

a.     Requiring IBOs to perform work at the beginning of their shifts, including booting up their work computers, connecting to Defendant's computer network, and opening computer applications that were necessary for their performance of telephone-based customer service, sales service and technical support, while not clocked into Defendant's timekeeping system, resulting in IBOs not being paid for such time;

b.     Requiring IBOs to take short rest breaks lasting less than twenty (20) minutes while not clocked into Defendant's timekeeping system, resulting in IBOs not being paid for such time; *see* 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes … must be counted as hours worked.");

c.     Requiring IBOs to perform troubleshooting activities during periods within their shifts in which they became disconnected from Defendant's computer network, during which Defendant neither recorded the time the IBOs worked nor compensated them for this work ;

d.     Requiring IBOs to perform work at the end of their shifts, including closing computer applications, connecting from Defendant's computer network, and shutting down their work computers, while not clocked into Defendant's timekeeping system, resulting in IBOs not being paid for such time;

e.     Failing to compensate IBOs for periods in which they were clocked into Defendant's timekeeping system but were not actively engaging in telephone calls, including time spent reviewing company e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls;

f.     Failing to pay IBOs for time spent performing mandatory online training exercises that were directly related to their jobs as IBOs; *see* 29 C.F.R. § 785.27 ("Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met: (a) Attendance is outside of the employee's regular working hours; (b) Attendance is in fact voluntary; (c) The course, lecture, or meeting is not directly related to the

3

employee's job; and (d) The employee does not perform any productive work during such attendance.");

g.      Failing to pay IBOs for time spent attending mandatory meetings that were directly related to their jobs as IBOs; and

h.      Failing to compensate IBOs' hours worked in excess of forty (40) in a workweek at an hourly rate of time-and-a-half (1.5) of their regular rates of pay.

7.      As a result, there were many weeks in which Plaintiff's and similarly situated IBOs' total compensation for all hours worked averaged out to less than $7.25 (the applicable federal and Kentucky minimum wage at all relevant times), as well as many weeks in which Plaintiff and similarly situated IBOs did not receive compensation calculated at time-and-a-half (1.5) of their regular rate of pay for all hours worked in excess of forty (40) in a workweek, in violation of the FLSA, Kentucky's Wages and Hours Act, and Defendant's contractual obligation to pay its employees for all hours worked.

8.      Plaintiff brings this collective and class action pursuant to 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated hourly IBOs employed by Defendant in the applicable time period, and seek unpaid minimum, overtime, and contractually-owed wages, in addition to liquidated damages, fees and costs, and any other remedies to which they may be entitled.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

10.      The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

11.      The Court has personal jurisdiction over Defendant because it has conducted business in the Commonwealth of Kentucky, *see* KRS § 454.210, and has significant contacts

4

with the Commonwealth of Kentucky that are related to Plaintiff's claims as well as the claims of the putative FLSA Collective and Rule 23 Class, including employing Kentucky residents, including Plaintiff, to work as IBOs from their homes in Kentucky.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and (3) because Defendant employs IBOs in this district and because a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

13.     Plaintiff HYDRA BURTON is a resident of Ashland, Kentucky, and was employed by Defendant as an hourly-paid IBO from approximately April 2015 to March 2016. Plaintiff Burton signed a consent form to join this lawsuit, which is attached as *Exhibit 2*.

14.     Defendant is a Florida corporation with a principal business address located at 4100 SW 28th Way, Fort Lauderdale, Florida 33312.Defendant may be served on its statutory agent Vickie Carcaise at the same address.

15.     At all relevant times, Defendant's sole business purpose has been to provide telephone-based customer service, sales service and technical support to customers of the companies that Defendant serves as clients, including Great Healthworks, the producer of the dietary supplement Omega XL.

## GENERAL ALLEGATIONS

### FLSA Coverage

16.     The FLSA applies in this case on an enterprise basis.

17.     Defendant's annual sales exceed $500,000.

18.     At all relevant times Defendant has had more than two employees engaged in interstate commerce.

19.     Plaintiff and other similarly situated IBOs engaged in interstate commerce during

their employment and therefore they were/are also covered by the FLSA on an individual basis.

**IBOs are Employees, Not Independent Contractors**

20.     At all relevant times, Defendant's IBOs have been "employees" of Defendant for purposes of the FLSA and Kentucky's Wages and Hours Act.

21.     At all relevant times, Defendant has classified all of its IBOs as independent contractors.

22.     At all relevant times, Defendant's business of providing telephone-based customer service, sales service and technical support to its clients' customers has depended on IBOs' performance of their primary job duties, i.e. engaging in telephone-based customer service, sales service and technical support, which is integral to Defendant's business.

23.     At all relevant times, Defendant has required IBOs to form limited liability companies in order to execute contracts with Defendant and receive payments.

24.     At all relevant times, Defendant has required each IBO to sign standard contracts providing that the IBO would receive an hourly rate of pay as compensation for his or her services and identifying his or her specific hourly rate.

25.     At all relevant times, Defendant required IBOs to complete online time-sheets to record their time spent engaging in telephone-based customer service, sales service and technical support, which Defendant used to calculate IBOs' hourly compensation.

26.     At all relevant times since August 2015, Defendant has deducted an "administration fee" from each IBO's weekly pay.

27.     At all relevant times, Defendant has required IBOs, as a condition of working for Defendant, to complete training programs designed and administered by Defendant.

28.     The training programs Defendant required IBOs to complete included both a general course of training called "GVW University" as well as specific training courses tailored

to the particular customer accounts IBOs were assigned.

29.     Defendant required IBOs to participate in virtual "coaching" sessions and "town hall" meetings throughout their employment in which Defendant's trainers and supervisors provided IBOs with directions for improving and meeting Defendant's performance metrics.

30.     At all relevant times, Defendant required IBOs to follow specific scripts when engaging in telephone-based customer service, sales service and technical support.

31.     At all relevant times, Defendant has exercised full control over the volume of calls IBOs handle during their shifts, thereby depriving IBOs of any significant opportunity for profit.

32.     At all relevant times, Defendant has required IBOs to consent to Defendant's recording of their telephone calls for the purpose of evaluating their performance and providing them with training and instructions.

33.     At all relevant times, Defendant has expressly reserved the right to terminate its relationship with each IBO, and has terminated many IBOs' for reasons including unsatisfactory attendance, performance, and productivity.

34.     At all relevant times, Defendant required most, if not all of its IBOs, as a condition of working for Defendant, to work a set minimum amount of hours each week.

35.     At all relevant times, Defendant has maintained the authority to terminate the employment of IBOs based for a failure to meet the required minimum amount of hours each week, and has deemed such IBOs ineligible to be re-hired as IBOs.

36.     For example, Defendant required Plaintiff and other IBOs to work a minimum of fifteen (15) hours per week throughout their employment, five (5) of which had to be on a Saturday or Sunday.

37.     Although Defendant allowed IBOs to "bid" on which time of the day their shift

would start and end (which Defendant allocated based on half-hour intervals), upon Defendant's approval of their bids IBOs were required to work at the shift-time on which they had bid.

38.     At all relevant times, IBOs have worked from their homes for a consistent number of hours each week for Defendant over extended periods of time, which have exceeded one (1) year for many IBOs.

39.     For example, Plaintiff HYDRA BURTON worked at least fifteen (15) hours per week in every week from the week starting Sunday April 12, 2015 to the week starting Sunday October 25, 2015, and continued working for Defendant through March 2016.

40.     Other IBOs that worked during the same time as Plaintiff have continued working as IBOs through the present date.

41.     Defendant did not require IBOs to possess any unique skills in order to work for Defendant.

42.     At all relevant times, Defendant has recruited a wide variety of individuals to work as IBOs, including stay-at-home moms, retirees, military veterans and spouses, and college students.

43.     At all relevant times, most of Defendant's IBOs' work has consisted of inbound sales and customer service calls.

44.     To the extent IBOs utilized any skills in the course of performing their job duties, those skills were acquired from the training programs Defendant required all IBOs to complete.

45.     At all relevant times, Defendant has not required IBOs to make any capital investments in order to perform their work for Defendant.

46.     At all relevant times, the only materials or equipment IBOs have been required to have in order to work for Defendant has been a standard computer,    an internet connection and a headset.

47.     At all relevant times, Defendant has provided IBOs with the computer software necessary to engage in telephone-based customer service, sales service and technical support, including Defendant's call center scheduling and communication system, proprietary secure desktop technology, and virtual call center management system.

**<u>Defendant's Unlawful Pay Policies</u>**

**Unpaid Pre-shift Time**

48.     During their training and throughout their shifts, Plaintiff and similarly situated IBOs were instructed to begin each workday by booting up their computers, logging into and connecting to Defendant's computer network, and opening and accessing required computer software applications *before* punching into Defendant's employee timekeeping system.

49.     The process of booting up their computers, logging into and connecting to Defendant's computer network, and opening and accessing required computer software applications took Plaintiff and similarly situated IBOs at least 5-10 minutes on most occasions.

50.     Plaintiff's and similarly situated IBOs' preliminary work activities were integral and indispensable to their primary job duties of providing telephone-based customer support, and such work directly benefited Defendant.

51.     At all relevant times, Defendant has expressly refused to compensate Plaintiff and other similarly situated IBOs for the time spent at the beginning of each workday booting up their computers, logging into and connecting to Defendant's computer network, and opening and accessing required computer software applications.

**Unpaid Mid-Shift Time**

52.     During many shifts, Plaintiff and similarly situated IBOs have taken short meal or rest breaks lasting less than twenty (20) minutes.

53.     At all relevant times, Defendant's uniform, written policies have required

Plaintiff and other similarly situated IBOs to clock out of Defendant's timekeeping system for any time spent on breaks, regardless of whether they were less than the twenty-minute threshold proscribed by the US Department of Labor. *See* 29 C.F.R. § 785.18 ("Rest periods of short duration, running from 5 minutes to about 20 minutes … must be counted as hours worked.")

54.     As a result, in many weeks Defendant's IBOs, including Plaintiff, have clocked out and have not been paid for short meal or rest breaks of less than twenty (20) minutes.

55.     On many days, Plaintiff and other similarly situated IBOs have been disconnected from Defendant's computer network and as a result spent time troubleshooting technical issues, requesting and waiting for the assistance of technical support personnel, and restarting their computer and/or computer applications before they have been able to get connected back onto Defendant's system and time clock.

56.     At all relevant times, Defendant has expressly refused to compensate Plaintiff and other similarly situated IBOs for the time spent at during the workday troubleshooting technical issues, requesting and waiting for the assistance of technical support personnel, and restarting their computer and/or computer applications.

57.     At all relevant times, Defendant has deducted periods of time from Plaintiff's and other similarly situated IBOs' reported timesheets based on its determination that such time had not been spent engaging in telephone-based customer service, sales service and technical support.

58.     The periods of time that Defendant deducted from Plaintiff's and other similarly situated IBOs' timesheets included time spent on other compensable work activities, including reviewing company e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls.

59.     The time Plaintiff and other similarly situated IBOs spent reviewing company

e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls was integral and indispensable to their primary job duties of providing telephone-based customer support, and such work directly benefited Defendant.

60.     At all relevant times, Defendant has expressly refused to compensate Plaintiff and other similarly situated IBOs for the time spent reviewing company e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls.

**Unpaid Post-shift Time**

61.     At the end of each shift, Plaintiff and similarly situated IBOs were required to close computer software applications, log out of Defendant's computer network, and shut down their computers *after* punching out of Defendant's timekeeping system.

62.     The process of closing computer software applications, logging out of Defendant's computer network, and shutting down their computers took Plaintiff and similarly situated IBOs approximately five (5) minutes on most occasions.

63.     Plaintiff's and similarly situated IBOs' postliminary work activities were integral and indispensable to their primary job duties of providing telephone-based customer support, and such work directly benefited Defendant.

64.     At all relevant times, Defendant has expressly refused to compensate Plaintiff and other similarly situated IBOs for the time spent at the end of each workday closing computer software applications, logging out of Defendant's computer network, and shutting down their computers.

**Unpaid Training Time**

65.     As a condition of working for Defendant, Plaintiff and similarly situated IBOs were required to complete approximately two weeks of training, including general course called "GVW University" as well as specific training courses tailored to the particular customer

accounts Defendant assigned to them.

66.     The training that Plaintiff and similarly situated IBOs were required to complete was directly related to their primary job duties of providing telephone-based customer support, and such work directly benefited Defendant.

67.     Plaintiff's and similarly situated IBOs' completion of the required training was not voluntary.

68.     At all relevant times Defendant has refused to pay Plaintiff and similarly situated IBOs for time spent completing the required training.

### Unpaid Meetings

69.      In all or most of their week working for Defendant, Plaintiff and similarly situated IBOs were required to attend virtual "coaching" sessions and "town hall" meetings in which Defendant's trainers and supervisors provided them with directions for improving their performance metrics.

70.     The virtual "coaching" sessions and "town hall" meetings that Plaintiff and similarly situated IBOs were required to attend each lasted approximately thirty (30) minutes to one (1) hour.

71.     The virtual "coaching" sessions and "town hall" meetings that Plaintiff and similarly situated IBOs were required to attend were directly related to their primary job duties of providing telephone-based customer support, and such work directly benefited Defendant.

72.     Plaintiff's and similarly situated IBOs' attendance at virtual "coaching" sessions and "town hall" meetings was not voluntary.

73.     At all relevant times Defendant has refused to pay Plaintiff and similarly situated IBOs for time spent attending mandatory meetings, including virtual "coaching" sessions and "town hall" meetings.

**Unpaid Overtime**

74.    In many weeks, Plaintiff and similarly situated IBOs worked over forty (40) hours, and were not paid for time spent performing the work activities set forth above.

75.    To the extent Defendant did pay Plaintiff and similarly situated IBOs for hours worked in excess of forty (40) in a workweek, it did so at a rate less than time-and-a-half of their regular rate of pay.

76.    At all relevant times, Defendant's written agreement with Plaintiff and similarly situated IBOs has not provided for any additional compensation for hours worked in excess of forty (40) in a workweek.

77.    In many weeks, Plaintiff and similarly situated IBOs received "Incentive" pay which was computed based on a fixed percentage of the revenue generated by their sales calls.

78.    At all relevant times, Defendant has not maintained discretion over whether to pay "Incentive" pay to Plaintiff or other similarly situated IBOs.

79.    At all relevant times, Defendant has not maintained discretion over the amount of "Incentive" pay given to Plaintiff or other similarly situated IBOs.

80.    The "Incentive" payments Plaintiff and similarly situated IBOs received did not result in any increase to the hourly rate they received for working hours in excess of forty (40) in a workweek.

**Plaintiff's Employment**

81.    Plaintiff HYDRA BURTON was employed by Defendant as an IBO from approximately April 2015 to approximately March 2016.

82.    Throughout her employment with Defendant, Plaintiff worked from her home in Ashland, Kentucky.

83.    As an IBO, Plaintiff's duties included providing inbound telephone sales support

services for the product Omega XL and providing third-party telephone intake services for a prominent personal injury law firm.

84.     In April 2015, Plaintiff spent approximately two weeks of training, including general course called "GVW University" as well as specific training courses tailored to the particular customer accounts she was assigned.

85.     Defendant failed to pay Plaintiff for approximately 8-10 hours of time she spent training, resulting in Plaintiff's pay for the week averaging out to less than $7.25 per hour.

86.     Defendant required Plaintiff to sign a written agreement with Defendant providing that she would receive an hourly rate of pay for her services.

87.     The written contract Plaintiff signed identified her hourly rate of pay as $11 per hour.

88.     The written contract Plaintiff signed did not provide for any additional compensation for hours worked in excess of forty (40) in a workweek.

89.     In addition to her hourly rate, Plaintiff received periodic non-discretionary "Incentive" payments in amount equal to six percent (6% of her sales revenue).

90.     The "Incentive" payments Plaintiff received did not result in any increase to the hourly rate she received for working hours in excess of forty (40) in a workweek.

91.     Plaintiff typically worked five to seven 5-7 days per week.

92.     Plaintiff typically worked up to twelve (12) hours per day.

93.     Plaintiff regularly worked over 40 hours per week during the applicable time period.

94.     Throughout her employment with Defendant, Defendant failed to pay Plaintiff for time spent under forty (40) hours in a workweek, performing pre-shift, mid-shift, and post-shift activities, and attending training and meetings, resulting in Plaintiff receiving an effective hourly

rate in many weeks less than $7.25.

95.     For example, for the workweek of Sunday, September 13, 2015 through Saturday, September 19, 2015:

a.      Defendant paid Plaintiff $223.67 in hourly compensation, $0 in incentive pay, and deducted $8.95 from her pay as an administration fee, resulting in Plaintiff receiving gross pay of $214.72;

b.      Plaintiff worked five (5) shifts; Plaintiff was clocked in to Defendant's timekeeping system for a total of 34.37 hours;

c.      Plaintiff spent at least 3.5 additional hours on unpaid pre-shift activities such as booting up her computer, logging into and connecting to Defendant's computer network, and opening and accessing required computer software applications, unpaid mid-shift activities such as taking short meal or rest breaks lasting less than twenty (20) minutes, troubleshooting technical issues, requesting and waiting for the assistance of technical support personnel, restarting her computer and/or computer applications, reviewing company e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls, unpaid post-shift activities such as closing computer software applications, logging out of Defendant's computer network, and shutting down her computer, and attending mandatory company meetings, including virtual "coaching" sessions and "town hall" meetings;

d.      As a result, Plaintiff worked at least 37.87 hours, and her total compensation for the week ($214.72) averaged out to at most $5.67 per hour.

96.     Throughout her employment with Defendant, there were many weeks in which Plaintiff spent time in excess of forty (40) in a workweek performing pre-shift, mid-shift, and post-shift activities, and attending mandatory meetings without compensation.

97.     In the workweeks in which Defendant did pay Plaintiff for hours worked in excess of forty (40), it paid her a rate less than time-and-a-half of their regular rate of pay.

98.     For example, for the workweek of Sunday, July 12, 2015 through Saturday, July 18, 2015:

a.      Defendant paid Plaintiff $406.05 in hourly compensation and $43.71 in incentive pay, resulting in Plaintiff receiving gross pay of $449.76;

b.      Plaintiff worked five (5) shifts; Plaintiff was clocked in to Defendant's timekeeping system for a total of 41.5 hours;

c.  Plaintiff spent at least 3.5 additional hours on unpaid pre-shift activities such as booting up her computer, logging into and connecting to Defendant's computer network, and opening and accessing required computer software applications, unpaid mid-shift activities such as taking short meal or rest breaks lasting less than twenty (20) minutes, troubleshooting technical issues, requesting and waiting for the assistance of technical support personnel, restarting her computer and/or computer applications, reviewing company e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls, unpaid post-shift activities such as closing computer software applications, logging out of Defendant's computer network, and shutting down her computer, and attending mandatory company meetings, including virtual "coaching" sessions and "town hall" meetings;

d.  For example, on Tuesday, July 4, 2017, Plaintiff clocked out from 5:35 PM to 5:45 PM for short meal or rest break, and was not paid for this time;

e.  As a result, Plaintiff worked at least five (5) hours in excess of forty (40) in the workweek of Sunday, July 12, 2015 through Saturday, July 18, 2015, at least 3.5 of which were uncompensated, and none of which were compensated at an hourly rate of time-and-a-half of Plaintiff's regular rate of pay.

## COLLECTIVE ACTION ALLEGATIONS

99.  Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *Any individual who worked for Great Virtual Works as an Individual Business Owner at any time within the three (3) years prior to the commencement of this action.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition as necessary.

100.  Excluded from the proposed FLSA Collective are Defendant's executives, administrative, and professional employees, including computer professionals and outside sales persons.

101.  With respect to the claims set herein, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The class of employees on behalf of whom Plaintiff brings this collective

16

action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same factual and legal theories.

102.    The employment relationships between Defendant and every FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues—the amount of uncompensated pre, mid, and post-shift time owed to each IBO—do not vary substantially among the Collective members.

103.    The key legal issues are the same for every FLSA Collective member, to wit:

a.    Whether FLSA Collective members are employees or independent contractors;

b.    Whether the time FLSA Collective members spent training at the beginning of their employment with Defendant is compensable;

c.    Whether Defendant maintained a policy or practice of failing to pay FLSA Collective members for time spent training at the beginning of their employment with Defendant;

d.    Whether the time FLSA Collective members spent booting up their computers, logging into and connecting to Defendant's computer network, and opening and accessing required computer software applications before punching in is compensable;

e.    Whether Defendant maintained a policy or practice of failing to pay FLSA Collective members for time spent booting up their computers, logging into and connecting to Defendant's computer network, and opening and accessing required computer software applications;

f.    Whether the time FLSA Collective members spent taking short rest breaks lasting less than twenty (20) minutes while not clocked into Defendant's timekeeping system is compensable;

g.    Whether Defendant maintained a policy or practice of failing to pay FLSA Collective members for time spent taking short rest breaks lasting less than twenty (20) minutes;

h.    Whether the time FLSA Collective members spent troubleshooting activities during periods within their shifts in which they became disconnected from Defendant's computer network while not clocked into Defendant's timekeeping system is compensable;

i.  Whether Defendant maintained a policy or practice of failing to pay FLSA Collective members for time spent troubleshooting activities during periods within their shifts in which they became disconnected from Defendant's computer network;

j.  Whether the time FLSA Collective members spent reviewing company e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls while clocked into Defendant's timekeeping system is compensable;

k.  Whether Defendant maintained a policy or practice of failing to pay FLSA Collective members for time spent reviewing company e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls;

l.  Whether the time FLSA Collective members spent logging out of other computer software applications and shutting down their work computers after punching out is compensable;

m.  Whether Defendant maintained a policy or practice of failing to pay FLSA Collective members for time spent logging out of other computer software applications and shutting down their work computers;

n.  Whether the time FLSA Collective members spent attending mandatory meetings is compensable;

o.  Whether Defendant maintained a policy or practice of failing to pay FLSA Collective members for time spent attending mandatory meetings;

p.  Whether Defendant maintained a policy and/or practice of failing to compensate FLSA Collective members' hours worked in excess of forty (40) in a workweek at an hourly rate of time-and-a-half (1.5) of their regular rates of pay;

q.  Whether Defendant maintained any discretion over the "Incentive" payments it paid to FLSA Collective members; and/or

r.  Whether Defendant maintained a policy and/or practice of failing to pay FLSA Collective members overtime compensation on account of the period "Incentive" payments they received based on a fixed percentage of their sales.

104.  Plaintiff estimates the FLSA Collective, including both current and former employees over the relevant period, will include approximately 500 members. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

105.     Plaintiff BURTON brings this action pursuant to Fed R. Civ. P. 23(b)(2) and

(b)(3) on her own behalf and on behalf of:

> *Any individual who worked for Great Virtual Works as an*
> *Individual Business Owner in the Commonwealth of Kentucky at*
> *any time within the five (5) years prior to the commencement of*
> *this action.*

(hereinafter referred to as the "Rule 23 Class").   Plaintiff reserves the right to amend this

definition as necessary.

106.     Excluded from the proposed Rule 23 Class are Defendant's executives,

administrative, and professional employees, including computer professionals and outside sales

persons.

107.     The members of the Rule 23 Class are so numerous that joinder of all Rule 23

Class members in this case would be impractical. Plaintiff reasonably estimates that there are at

least 40 Rule 23 Class members. Rule 23 Class members should be easy to identify from

Defendant's computer systems and electronic payroll and personnel records.

108.     There is a well-defined community of interest among Rule 23 Class members and

common questions of law and fact predominate in this action over any questions affecting

individual members of the Rule 23 Class.   These common legal and factual questions, include,

but are not limited to, the following:

a.      Whether Rule 23 Class members are employees or independent contractors;

b.      Whether the time Rule 23 Class members spent training at the beginning of their
        employment with Defendant is compensable;

c.      Whether Defendant maintained a policy or practice of failing to pay Rule 23
        Class members for time spent training at the beginning of their employment with
        Defendant;

d.      Whether the time Rule 23 Class members spent booting up their computers,
        logging into and connecting to Defendant's computer network, and opening and

accessing required computer software applications before punching in is compensable;

e.     Whether Defendant maintained a policy or practice of failing to pay Rule 23 Class members for time spent booting up their computers, logging into and connecting to Defendant's computer network, and opening and accessing required computer software applications;

f.     Whether the time Rule 23 Class members spent taking short rest breaks lasting less than twenty (20) minutes while not clocked into Defendant's timekeeping system is compensable;

g.     Whether Defendant maintained a policy or practice of failing to pay Rule 23 Class members for time spent taking short rest breaks lasting less than twenty (20) minutes;

h.     Whether the time Rule 23 Class members spent troubleshooting activities during periods within their shifts in which they became disconnected from Defendant's computer network while not clocked into Defendant's timekeeping system is compensable;

i.     Whether Defendant maintained a policy or practice of failing to pay Rule 23 Class members for time spent troubleshooting activities during periods within their shifts in which they became disconnected from Defendant's computer network;

j.     Whether the time Rule 23 Class members spent reviewing company e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls while clocked into Defendant's timekeeping system is compensable;

k.     Whether Defendant maintained a policy or practice of failing to pay Rule 23 Class members for time spent reviewing company e-mails and notification, preparing for telephone calls, and completing notes related to telephone calls;

l.     Whether the time Rule 23 Class members spent logging out of other computer software applications and shutting down their work computers after punching out is compensable;

m.     Whether Defendant maintained a policy or practice of failing to pay Rule 23 Class members for time spent logging out of other computer software applications and shutting down their work computers;

n.     Whether the time Rule 23 Class members spent attending mandatory meetings is compensable;

o.     Whether Defendant maintained a policy or practice of failing to pay Rule 23 Class members for time spent attending mandatory meetings;

p.     Whether Defendant maintained a policy and/or practice of failing to compensate Rule 23 Class members' hours worked in excess of forty (40) in a workweek at an hourly rate of time-and-a-half (1.5) of their regular rates of pay;

q.     Whether Defendant maintained any discretion over the "Incentive" payments it paid to Rule 23 Class members;

r.     Whether Defendant maintained a policy and/or practice of failing to pay Rule 23 Class members overtime compensation on account of the period "Incentive" payments they received based on a fixed percentage of their sales;

s.     Whether Defendant was contractually obligated to pay Rule 23 Class members for all hours worked; and/or

t.     Whether Defendant's non-payment of wages for all compensable time amounts to a breach of contract.

109.    Plaintiff's claims are typical of those of the Rule 23 Class in that she and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.   Plaintiff's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Class members.

110.    Plaintiff BURTON will fully and adequately protect the interests of the Rule 23 Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

111.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

112. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

113. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

114. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
<u>**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.**</u>
<u>**FAILURE TO PAY MINIMUM WAGE**</u>

115. Plaintiff re-alleges and incorporates all previous paragraphs herein.

116. 29 U.S.C. § 206(a) provides: "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at … not less than … $7.25 an hour…."

117. At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq.*

118. Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

119. At all times relevant to this action, Plaintiff and other FLSA Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

120. Plaintiff and other FLSA Collective members either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

121. Defendant has had, and continues to have, an annual gross business volume in excess of $500,000.

122. At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and other FLSA Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

123. At all times relevant to this action, Plaintiff and other FLSA Collective members were not exempt from the protections of the FLSA.

124. At all times relevant to this action, Defendant failed to pay Plaintiff and other FLSA Collective members for all hours worked, including time spent booting up their computers, logging into and connecting to Defendant's computer network, opening and accessing required computer software applications, troubleshooting and awaiting resolution of technical issues, handling incoming customer support telephone calls, completing notes from calls, exchanging work-related e-mails and other communications, closing computer software applications, logging out of Defendant's computer network, and shutting down their computers.

125. As a result of Defendant's policy of failing to pay Plaintiff and other FLSA Collective members for all hours worked, there were many weeks in which Plaintiff and other FLSA Collective members received an amount of pay that averaged out to less than $7.25 per hour.

126. Defendant's failure to pay Plaintiff and other FLSA Collective members minimum wage was knowing and willful. Defendant knew or could have easily determined how long it took for its IBOs to complete pre, mid, and post-shift activities and Defendant could have

properly compensated Plaintiff and other FLSA Collective members for such work, but did not. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years….").

127.    Defendant's failure to pay Plaintiff and other FLSA Collective members minimum wage was not done in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or any state department of labor, or any administrative practice or enforcement policy of such departments.

128.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

129.    Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

**COUNT II**
**(29 U.S.C. § 216(b) Collective Action)**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME**

130.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

131.    29 U.S.C. § 207(a)(1) provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

132.    Plaintiff and other FLSA Collective Members worked many workweeks in excess

of 40 hours within the last three years.

133. At all times relevant to this action, Defendant failed to pay Plaintiff and other FLSA Collective members for all hours worked in excess of 40 in a workweek, including time spent booting up their computers, logging into and connecting to Defendant's computer network, opening and accessing required computer software applications, troubleshooting and awaiting resolution of technical issues, handling incoming customer support telephone calls, completing notes from calls, exchanging work-related e-mails and other communications, closing computer software applications, logging out of Defendant's computer network, and shutting down their computers.

134. In workweeks where Plaintiff and other Class members worked 40 hours or more, the time spent performing pre, mid, and post-shift activities should have been paid at the federally mandated rate of 150% of each employee's regularly hourly wage, but Plaintiff and Class Members received no pay for such hours.

135. Defendant's failure to pay Plaintiff and similarly situated IBOs overtime wages was knowing and willful. Defendant knew or could have easily determined how long it took for its IBOs to complete pre, mid, and post-shift activities and Defendant could have properly compensated Plaintiff and other FLSA Collective members for such work, but did not. *See* 29 U.S.C. § 255(a) ("[A] cause of action arising out of a willful violation [of the FLSA] may be commenced within three years….").

136. Defendant's failure to pay Plaintiff and similarly situated IBOs overtime was not done in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the U.S. Department of Labor and/or any state department of labor, or any administrative practice or enforcement policy of such departments.

137. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the

Act, an employee is entitled to his or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

138.     Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

**COUNT III**

**(Rule 23 Class Action)**
**Violations of Kentucky's Wages and Hours Act, KRS § 337.275**
**FAILURE TO PAY MINIMUM WAGE**

139.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

140.     At all relevant times, Plaintiff and Rule 23 Class members were employed by Defendant within the meaning of KRS § 337.010 § (1), and Plaintiff and the Rule 23 Class members were not exempt from Kentucky's Wages and Hours Act.

141.     At all relevant times, KRS § 337.275 requires "every employer [to] pay to each of his employees wages at a rate of seven dollars and twenty-five cents ($7.25) an hour beginning July 1, 2009."

142.     At all times relevant to this action, Defendant failed to pay Plaintiff and other Rule 23 Class members for all hours worked, including time spent booting up their computers, logging into and connecting to Defendant's computer network, opening and accessing required computer software applications, troubleshooting and awaiting resolution of technical issues, handling incoming customer support telephone calls, completing notes from calls, exchanging work-related e-mails and other communications, closing computer software applications, logging out of Defendant's computer network, and shutting down their computers.

143.     As a result of Defendant's policy of failing to pay Plaintiff and other Rule 23 Class members for all hours worked, there were many weeks in which Plaintiff and other Rule 23 Class members received an amount of pay that averaged out to less than $7.25 per hour.

144. Defendant's failure to pay Plaintiff and other Rule 23 Class members minimum wage was not done in good faith, or in conformity with or in reliance on any written administrative regulation, order, ruling, approval, or interpretation by the Kentucky Labor Cabinet, or any administrative practice or enforcement policy of such departments.

145. As a result of Defendant's violations of KRS § 337.275, Plaintiff and the Rule 23 Class members are entitled to recover unpaid overtime wages dating five (5) years back, KRS § 413.120 (2), plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action, pursuant to KRS § 337.385.

146. Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

**COUNT IV**
**(Rule 23 Class Action)**
**Violations of Kentucky's Wages and Hours Act, KRS § 337.285**
**FAILURE TO PAY OVERTIME**

147. Plaintiff re-alleges and incorporates all previous paragraphs herein.

148. At all relevant times, Plaintiff and Rule 23 Class members were employed by Defendant within the meaning of KRS § 337.010 § (1), and were not exempt from the protections of the Kentucky's Wages and Hours Act.

149. KRS § 337.285 requires all employers to compensate their employees, with certain exceptions, at a rate of not less than time-and-a-half (1.5) of their regular hourly rate for all hours worked in excess of forty (40) hours in a workweek.

150. Plaintiff and the Rule 23 Class members are not contained in any of the groups of employees excluded from the provisions of KRS § 337.285.

151. In many weeks, Plaintiff and similarly situated IBOs worked over forty (40) hours.

152. At all relevant times, Defendant has failed to pay Plaintiff and the Rule 23 Class

members for all hours Plaintiffs and the Class members worked in excess of forty (40) hours in a workweek at a rate of not less than time-and-a-half (1.5) of their regular hourly rate.

153.    Defendant violated KRS § 337.285 by not properly compensating Plaintiff and the Rule Class members for all hours worked in excess of forty (40) hours in a workweek.

154.    As a result of Defendant's violations of KRS § 337.285, Plaintiff and the Rule 23 Class members are entitled to recover unpaid overtime wages dating five (5) years back, KRS § 413.120 (2), plus an additional equal amount in liquidated damages, reasonable attorneys' fees, and costs of this action, pursuant to KRS § 337.385.

**COUNT V**
**(Rule 23 Class Action)**
**Kentucky Common Law**
**<u>BREACH OF CONTRACT</u>**

155.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

156.    At all times relevant to this action, Defendant maintained contracts with Plaintiff and every other Rule 23 Class member which required it to pay each employee for each hour they worked at his or her contractual hourly rate as provided therein.

157.    Plaintiff and every other Rule 23 Class member performed under the contract by doing their jobs and carrying out pre, mid, and post-shift activities that Defendant required or accepted.

158.    By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for the pre, mid, and post-shift activities performed each shift, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Class.

159.    Plaintiff's and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., "gap time" claims).

160.    As a direct and proximate result of Defendant's breaches of the contracts alleged

herein, Plaintiff and every other member of the Rule 23 Class have been damaged, in an amount to be determined at trial.

161. Defendant is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, HYDRA BURTON, requests an entry of an Order the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Counts I and II);

b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Counts III, IV, and V);

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members and Rule 23 Class members, and permitting Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representatives of the Rule 23 Class and undersigned counsel as Class counsel for the same;

e. Declaring Defendant willfully violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendant violated KRS §§ 337.010, *et. seq.* and that said violations were intentional, willfully oppressive, fraudulent and malicious;

g. Declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Class by failing to pay them for each hour they worked at a contractual hourly rate;

h. Granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff and the FLSA Collective and the Rule 23 Class, the full amount of damages and liquidated damages available by law;

i. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in this action as provided by statute;

j.      Awarding pre- and post-judgment interest to Plaintiff on these damages; and

k.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, HYDRA BURTON, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated:   June 6, 2017       By:     */s Trent Taylor*
                                     Trent Taylor
                                     Robi J. Baishnab (*pro hac vice pending*)
                                     **BARKAN MEIZLISH HANDELMAN GOODIN DEROSE WENTZ, LLP**
                                     250 E. Broad Street, 10th Floor
                                     Columbus, OH 43215
                                     T: (800) 274-5297
                                     F: (614) 744-2300
                                     ttaylor@barkanmeizlish.com
                                     rbaishnab@barkanmeizlish.com

                                     Nicholas R. Conlon (*pro hac vice pending*)
                                     JTB LAW GROUP, LLC
                                     155 2nd St., Suite 4
                                     Jersey City, NJ 07302
                                     T: (877) 561-0000
                                     F: 855) 582-5297
                                     nicholasconlon@jtblawgroup.com

                                     *Attorneys for Plaintiff*